United States Court of Appeals,

Fifth Circuit.

No. 94-40265.

STATE of Texas, Petitioner,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Respondent.

Aug. 22, 1995.

On Petition for Review from the United States Department of Health
and Human Services.

Before REAVLEY, KING and WIENER, Circuit Judges.

KING, Circuit Judge:

The State of Texas appeals an administrative order of the
Department of Health and Human Services denying a proposed
amendment to its state Medicaid plan. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

In September of 1990, Texas submitted a proposed amendment to
its state Medicaid plan to the Health Care Financing Administration
("HCFA") of the United States Department of Health and Human
Services ("HHS"). Under this proposed amendment, Texas sought to
expand the Medicaid program to cover inpatient residential chemical
dependency treatment for children under age twenty-one who qualify
for the Medicaid Early Periodic Screening, Diagnostic, and
Treatment program. By letter dated May 2, 1991, HCFA rejected the
proposed amendment.

The State requested reconsideration. After full briefing by
both parties and numerous meetings, the HCFA administrator upheld

1

the initial decision to deny the proposed amendment. The State then requested a formal hearing on the disapproval; after three days of hearings, the hearing officer recommended that the decision to deny the proposed amendment be upheld. Texas appealed to the Secretary of HHS, who, through the HCFA Administrator, accepted the hearing officer's recommendation and issued an administrative order upholding the denial of the proposed amendment. Texas filed a timely appeal of this final administrative order and the matter is now before this court.

## II. STANDARD OF REVIEW

The case at hand centers around an issue of statutory construction. While each side argues that the "plain meaning" of a certain portion of the Medicaid statute unambiguously indicates that Congress intended the statute to be interpreted in its favor, we find no such "plain meaning" in the statute. HHS, as the federal agency with expertise in overseeing the Medicaid program, has proffered a construction of the implicit statutory gap. Our task is to determine whether the statutory construction proffered by HHS is valid. Under such circumstances, judicial review is quite limited. *See Pauly v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991) ("When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policymaking authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited."). In the seminal case of *Chevron, U.S.A. v. Natural Resources Defense*

*Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court held that:

> [t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.... Sometimes the legislative delegation to any agency on a particular question is implicit rather than explicit. *In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency....*

*Id.* at 843-44, 104 S.Ct. at 2782 (internal quotations, citation and footnotes omitted) (emphasis added). If Congress has not addressed the precise question at issue, "the [c]ourt does not simply impose its own construction on the statute ... [r]ather ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. Thus, we proceed to analyze whether HHS's denial of the proposed amendment to the Texas Medicaid plan was based upon a permissible construction of the relevant Medicaid statute.

## III. ANALYSIS

Medicaid is a health care program, primarily for the poor and disabled, which is jointly financed by the federal and state governments and which is administered at the state level, subject to umbrella supervision by HCFA, a division of HHS. The State of Texas asked HCFA for permission to amend its state Medicaid plan to cover residential drug and alcohol treatment for children under age twenty-one who are eligible to receive other health care services under the Early Periodic Screening, Diagnostic and Treatment

3

("EPSDT") program.[1]  Without HCFA's permission to implement the proposed amendment, the State of Texas cannot receive federal matching funds if it elects to provide these services.

HCFA denied Texas's proposed amendment on the grounds that it would impermissibly result in the flow of federal Medicaid funds to reimburse room and board expenses.[2]  Specifically, HCFA contends that the portion of the Medicaid statute which provides federal matching funds for the provision of rehabilitative services, 42 U.S.C. § 1396d(a)(13), does not permit matching funds to pay for room and board costs associated with the provision of rehabilitative services in a residential treatment facility.  The federal statute at issue provides that federal matching funds may be used, *inter alia,* for:

> (13) other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under

---

[1]EPSDT services include, *inter alia,* screening, vision, dental, and hearing services as well as:

> "[s]uch other necessary health care, diagnostic services, treatment, and other measures ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services...."

42 U.S.C. § 1396d(r)(5).

[2]Initially, HCFA also denied the proposed amendment on the grounds that the provision of chemical dependency services would violate the statutory exclusion for coverage of services for those under age 65 in an institution for mental disease (the so-called "IMD exclusion").  *See* 42 U.S.C. § 1396d(a)(14);  42 C.F.R. § 435.1008(a)(2).  As HCFA did not pursue this argument after the initial hearing and the agency's final decision does not rest upon it, we need not address its validity as a basis for denying the proposed amendment.

State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

42 U.S.C. § 1396d(a)(13).[3]

The State contends that because the language of § 1396d(a)(13) does not explicitly *exclude* room and board services, the term "rehabilitative services" should be construed in its broadest sense to include necessary tangential room and board expenses when those rehabilitative services are provided in a residential treatment setting. The State bolsters its argument by contending that because the parenthetical "provided in a facility, a home, or other setting" evinces an *explicit* intent to provide coverage for services rendered in either an inpatient or an outpatient setting, this necessarily evinces an *implicit* intent to provide coverage for all necessary corollary expenses in either an inpatient or an outpatient setting—such as room and board in a residential treatment facility.

The State's final argument is that Congress knew how to explicitly exclude coverage for room and board expenses when it wanted to do so, as evidenced by other sections in the Medicaid statute. *See* 42 U.S.C. §§ 1396t(a)(9), 1396u(f)(1) (explicitly excluding room and board coverage for frail elderly and

---

[3]The statute also provides federal matching funds for "any other medical care, and any other type of remedial care recognized under State law, specified by the Secretary...." 42 U.S.C. § 1396d(a)(25). While Texas initially argued to HHS that its proposed amendment should be approved under this section, the Secretary opted not to exercise his discretion under § 1396d(a)(25) in the State's favor. The State concedes in its brief that "[t]he [S]tate has not brought the (a)(25) issue to this [c]ourt."

5

developmentally disabled in the provision of home and community care services). Thus, Congress's failure to explicitly exclude room and board expenses in the section authorizing coverage of rehabilitative services indicates that Congress did not wish to exclude coverage for such expenses in this particular context.

HCFA concedes that § 1396d(a)(13) permits the payment of federal matching funds for rehabilitative services, whether those services are provided in an inpatient or an outpatient setting. However, HCFA argues that it historically has construed the federal Medicaid statute as authorizing federal funding of *inpatient* services—including inpatient substance abuse treatment—only if the services are provided in one of four types of facilities for which there are federal quality assurance standards: (1) hospitals; (2) skilled nursing facilities (SNFs); (3) intermediate care facilities for the mentally retarded (ICF-MRs); and (4) inpatient psychiatric hospitals. Thus, HCFA contends, its historical construction of the Medicaid statute indicates that Congress would have explicitly *included* coverage for room and board if it had intended such expenses to be covered. Congressional silence, in other words, more likely evinces an *agreement* with HCFA's antecedent interpretation excluding such expenses in unregulated facilities rather than *disagreement:* if Congress had *disagreed* with HCFA's longstanding interpretation, it would explicitly have said so.

HCFA also contends that the language of § 1396d(a)(13) belies the State's argument that federal funding for both inpatient and

6

outpatient rehabilitation services evinces a congressional intent to pay for necessary corollary expenses such as room and board. Specifically, HCFA notes that if the statute is construed as mandating federal matching funds for all necessary corollary services regardless of setting, the result would be extreme. For example, assuming arguendo that the statute mandates matching funds for room and board expenses associated with a stay in a residential substance abuse treatment facility, *a fortiori* it would necessitate matching funds for room and board expenses associated with rehabilitation treatment in one's own home or in a board and care home. In any of these settings—at home, in a board and care home, or in a residential treatment facility—the recipient of rehabilitative services must eat and sleep. Yet it would be unacceptable to suggest that Congress intended federal matching funds to pay for room and board expenses for those living in their own home or in a board and care home. The reason, HCFA contends, is that the structure of the statutory scheme crafted by Congress reveals an intent to use limited Medicaid dollars to pay for room and board expenses only in those facilities for which Congress has extracted the quid pro quo of federal quality assurance standards. No federal standards, no federal Medicaid dollars.

We are also persuaded by HCFA's argument that the explicit exclusions for room and board which appear elsewhere in the Medicaid statute are not apposite to Congressional intent regarding rehabilitative services because the explicit exclusions were passed in 1990—*subsequent* to the passage of § 1396d(a)(13). Indeed, these

7

explicit exclusions, which appear at 42 U.S.C. §§ 1396t(a)(9) and 1396u(f)(1), appear in sections that provide coverage for home and community care services for the frail elderly and the developmentally disabled—services which by their very nature could have been interpreted as containing an implicit room and board component if no explicit exclusion had been provided. If anything, the fact that Congress felt compelled in 1990 to explicitly exclude payment for room and board evinces a desire to ensure that Medicaid dollars do not flow to unregulated facilities.

In short, § 1396d(a)(13) is ambiguous and the legislative history of the section sheds no light. Congress has provided no guidance as to whether it intended to permit federal matching funds to pay for room and board services provided in conjunction with residential chemical dependency treatment. The construction given to § 1396d(a)(13) by HHS and HCFA is consistent with the overall framework of the Medicaid program and with the agency's permissible historical construction of the statute as restricting federal matching funds to inpatient services provided in facilities for which there exist federal quality assurance standards. Accordingly, under the edict of *Chevron,* this permissible construction is entitled to our deference.

## IV. CONCLUSION

For the foregoing reasons, the administrative order of the Department of Health and Human Services is hereby AFFIRMED.